**BRYAN T. DAKE**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**James F. Battin Courthouse**
**2601 Second Avenue North, Suite 3200**
**Billings, MT 59101**
**Phone: 406-657-6101**
**Fax: 406-657-6058**
**Email: Bryan.Dake@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **DANA MICHAEL BULLCOMING,** Defendant. | **CR 17-89-BLG-SPW** **SENTENCING MEMORANDUM** |

1

## INTRODUCTION

"Something had to be done." This is what Bureau of Indian Affairs Law Enforcement Officer Dana Michael Bullcoming told L.B. when he was at her house in the early morning hours of October 31, 2015. Officer Bullcoming told her he would need to report her to social services and arrest her for child endangerment because she was intoxicated in her own house with her children asleep in another room. Afraid of losing her new job and kids, L.B. engaged in unprotected vaginal sex with Officer Bullcoming to avoid getting in trouble.

Officer Bullcoming now stands before this Court after then acting under the color of law and depriving L.B. of her rights. A statutory maximum sentence, followed by a term of supervised release, holds him accountable for this offense.

## BRIEF SUMMARY

Bullcoming pled guilty to one count of deprivation of rights under the color of law on December 19, 2017, and it was adopted in full by the court on January 3, 2018. PSR ¶ 3. The Presentence Investigation Report (PSR) has established a criminal history score of 0, which places Mr. Bullcoming in criminal history category I. PSR ¶ 33. The PSR has calculated a total offense level of 35, with a guideline range of imprisonment for the offenses of conviction of 168 to 210

months; however, that statutory maximum sentence is 120 months' incarceration. PSR ¶¶ 33, 75.   There are no objections to the guideline range or offense level.

A sentence of 120 months incarceration, three years supervised release, and a $100 special assessment is an appropriate sentence.

## SENTENCING WITNESSES

The government anticipates that the victim, L.B., will speak at sentencing. The government does not anticipate any additional sentencing witnesses.

## ARGUMENT

**Sentencing Analysis**

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."   Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;
- promote respect for the law;
- provide just punishment for the offense;
- afford adequate deterrence to criminal conduct;
- protect the public from further crimes of the defendant; and,

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) sets forwards additional considerations for the Court when imposing an appropriate sentence. "[T]he nature and circumstances of the offense and the history and characteristics of the defendant" and the "kinds of sentences available" should be considered. 18 U.S.C. § 3553(a)(1),(3). The Court should similarly consider the sentencing guidelines and policy statements, as well as "the need to avoid unwarranted sentencing disparities." 18 U.S.C. §3553(a)(4),(5),(6). Finally, the Court should consider "the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a)(7).

**Sentencing Recommendation**

The United States respectfully recommends a sentence of 120 months' incarceration, followed by three years of supervised release and a $100 special assessment.

The seriousness of the offense cannot be overstated. Bullcoming entered L.B.'s house. He told L.B. he was going to arrest her and report her to social services because she was drunk with her children in her house. PSR ¶ 7. "Something had to be done" is what Officer Bullcoming told L.B. and he then told her that he was talking about sex. PSR ¶¶ 7-8. L.B. had just began working a

new job and could not afford to lose the position, or leave her children unsupervised, so she acquiesced to Bullcoming's demand. PSR ¶ 9. They had unprotected vaginal sex and then Bullcoming left. *Id.* Shortly after the assault occurred, L.B. discovered she was pregnant with Bullcoming's child. *Id.* L.B. was in a position that day that no person should ever face – have sex with an officer or go to jail.

Police officers are integral in our society. They protect our citizens through the enforcement of our laws. Our government relies on their honesty, integrity and fair-treatment of all citizens. People trust law enforcement to keep them safe and look after their well-being. When one of our own, an officer with years of experience, breaks this trust the repercussions are substantial. People read about it or hear about it and likely keep these sorts of incidents in the back of their mind for their next interaction with law enforcement.

Most importantly, the victim of the officer's offense is uniquely impacted and her pain will live on for years. Having an officer come in to your house and tell you that you are going to be trouble for being drunk is scary. This fear reaches a new level when the officer then abuses his position for his own sexual gratification. It is a pain that will continue on and something L.B. has been addressing in her counseling after the assault. PSR ¶ 13. She lost wages when she

was pregnant with Officer's Bullcoming's child and was unable to work.  *Id.* The ramifications to the victim are likely everlasting.

Mr. Bullcoming is 43 years old and a minimal criminal history, who, until very recently, was a law enforcement officer for BIA.  To Bullcoming's credit, in considering his lack of criminal history, he has shown an ability to be law abiding citizen.  This should be noted by the Court.  However, in the law enforcement profession you are not judged solely on your own criminal history, but you are also held responsible for your official conduct as an officer and any abuse of this position of trust.  This is exactly what sets him apart from a person similarly situated with Bullcoming's criminal history; he was in a position where the public trusted him.

A sentence imposed by the Court should also promote respect for the law and provide adequate deterrence, both to Bullcoming and the general public.  The government has a strong interest in protecting the public from the improper conduct of law enforcement officers.  Bullcoming's conduct is no exception. The general public needs to understand that officers will be held responsible for their breach of the public's trust and the commission of crimes.  Bullcoming has likely lost any career in law enforcement and his ability to reoffend in this same way has been severely diminished.  However, other law enforcement officers

6

must understand that this conduct will never, under any circumstances, be tolerated.

Bullcoming is not the first former police officer to get sentenced for deprivation of rights under color of law in the Ninth Circuit. In *United States v. Connelly*, Judge Morris sentenced a former tribal police officer on the Blackfeet Indian Reservation to 24 months of incarceration following his misdemeanor depravation of rights conviction and felony conviction for providing a false statement to a federal officer related to forcing a woman to perform oral sex on him to avoid going to jail. *United States v. Connelly*, 613 Fed. Appx. 604, 605 (9th Cir. 2015)(unpublished) (Connelly was acquitted of the sexual abuse charge and sentenced to 12 months on the misdemeanor conviction and 24 months on the false statement, to be served concurrently). In *United States v. Perez*, a former San Bernardino Police Department officer was sentenced to 300 months for forcing one woman to engage in oral sex and another woman to engage in vaginal sex using his authority as a police officer. *United States, v. Jose Jesus Perez*, 2016 WL 1003368, (9th Cir. 2016, Appellant's Br. at 2, 26). In *United States v. Feliciano Sanchez*, a Bell, California police officer pled guilty and was sentenced to 108 months for forcing a woman to give him oral sex following a traffic stop.

*United States v. Feliciano Sanchez*, 2011 WL 3689102 (9th Cir. 2011, Appellant's Br. at 5).

A sentence of 120 months imprisonment, three years of supervised release, and payment of a special assessment fee, adequately addresses all sentencing considerations and is sufficient, but not greater than necessary.

DATED this 17th day of April, 2018.

>	KURT G. ALME
>	United States Attorney
>
>	*/s/ Bryan T. Dake*
>	BRYAN T. DAKE
>	Assistant U.S. Attorney